IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JOSEPH SOMERVILLE, III,** *et al.* | * | |
| | * | |
| Plaintiffs, | * | |
| | * | Civil No. **PJM 19-0490** |
| **WEST TOWN BANK & TRUST** | * | |
| | * | |
| Defendant. | * | |

## **MEMORANDUM OPINION**

This is a putative class action concerning an alleged illegal kickback scheme under which Defendant West Town Bank & Trust ("West Town") purportedly accepted payments, primarily in the form of U.S. postage stamps, from All Star Title, Inc. ("All Star") in exchange for referring mortgagors to All Star, a mortgage settlement services company. Plaintiffs are borrowers who either currently have or recently had a residential mortgage originated or brokered by West Town which All Star settled. As a result of the scheme, Plaintiffs assert, they were overcharged by All Star for settlement services. The payment of kickbacks, they allege, are a patent violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607(a), and the scheme further violates the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, and antitrust law pursuant to the Sherman Act, 15 U.S.C. § 1.

The matter is before the Court on West Town's Motion to Dismiss, ECF No. 17. Plaintiffs' have filed a response, ECF No. 21, and West Town has replied, ECF No. 22. Oral Argument on the Motion was held on October 28, 2019. For the reasons stated below, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** the motion.

1

*a. Standard of Review*

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

If pleadings allege fraud or mistake, as Plaintiffs here do concerning their RICO claim, "a party must state with particularity the circumstances constituting the fraud or mistake." Fed. R. Civ. P. 9(b). Under the heightened pleading standard of Rule 9(b), "[t]hese circumstances are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentations and what [he or she] obtained thereby.'" *Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 219 (4th Cir. 2015)

*b. Tolling of the Applicable Statutes of Limitations*

West Town argues that Plaintiffs' claims pursuant to RESPA, RICO, and the Sherman Act are barred because the statute of limitations for each law has run. Plaintiffs do not dispute that the time limits under these statutes – one year for RESPA and four years for RICO and the Sherman Act – did pass prior to the filing of their claim.[1] But, they argue, because West Town fraudulently

---

[1] Claims brought under RESPA 12 U.S.C. § 2607 are subject to a one-year statute of limitations pursuant to 12 U.S.C. § 2614. That period begins to run "from the date of the occurrence of the violation, which generally refers to the date of closing for loan origination violations." *Fangman v. Genuine Title*, No. RDB-14-0081, 2017 WL 2591525 (D. Md. June 15, 2014) (quoting *Grant v. Shapiro & Burson, LLP*, 871 F. Supp. 2d 462, 470 (D. Md. 2012)). RICO claims are subject to a four-year statute of limitations that "begin[s] to run from the date when the plaintiff should have known of the existence of a RICO injury." *Dickerson v. TLC The Laser Eye Center Institute, Inc.*, 493 Fed. Appx. 390, 393 (4th Cir. 2012) (citing *Rotella v. Wood*, 528 U.S. 549, 556 (2000)). Likewise, 15 U.S.C. § 15b imposes a four-year limitations period upon Sherman Act claims, which "begins to run when a defendant commits" an injurious act. *Go*

concealed their allegedly illegal actions, the respective statutes of limitations were equitably tolled. ECF No. 1, ¶ 243. In other words, they say, West Town's active concealment of its alleged violations prevented the Plaintiff borrowers from being on notice of the bank's supposed wrongdoing until – in the case of some Plaintiffs – over eight years after their loan closing. *See, e.g.*, ECF No. 17-1, p. 9.

The Fourth Circuit recently addressed this very issue in a strikingly similar case, *Edmonson v. Eagle National Bank*. 922 F.3d 535 (4th Cir. 2019). As in the present case, plaintiffs in *Edmonson* were residential mortgagors who alleged their lenders received kickbacks for referrals to a title company for settlement services. 922 F.3d at 541. The *Edmonson* court reasserted the long-established standard that in order to "toll a limitations period based on fraudulent concealment, a plaintiff must demonstrate: (1) the party pleading the statute of limitations fraudulently concealed facts that are the basis of the plaintiff's claim, and (2) the plaintiff failed to discover those facts within the statutory period, despite (3) the exercise of due diligence." 922 F.3d at 548 (quoting *Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, 122 (4th Cir. 1995)).

West Town argues, first that, as a factual matter, it did not fraudulently conceal pertinent facts from Plaintiffs. The Complaint points to an opposite conclusion.

In the present context, affirmative acts of concealment "need not be separate and apart" from the acts of the underlying violation, "but instead may include acts of concealment involved in the alleged violation itself." *Edmonson*, 922 F.3d at 553 (quoting *Marlinton* 71 F.3d at 126) (markings omitted). Thus, "[a] plaintiff satisfies its burden to allege an affirmative act of concealment if, for example, it alleges that the defendant employed 'some trick or contrivance

---

*Computer, Inc. v. Microsoft Corp.*, 508 F.3d 170 (4th Cir. 2007) (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971)).

intended to exclude suspicion and prevent inquiry.'" *Edmonson*, 922 F.3d at 553 (quoting *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 446-47 (6th Cir. 2012)).

Like the plaintiffs in *Edmonson*, Plaintiffs here allege that West Town concealed the kickbacks by not reporting the payments it received from All Star on the HUD-1 Settlement Statements and other settlement documents, including the Good Faith Estimate. ECF No. 1, ¶¶ 260-71; *Edmonson*, 922 F.3d at 542-543. Indeed, West Town concedes that Plaintiffs' allegations concerning the HUD-1 are indistinguishable from what the Fourth Circuit determined "constitute[d] an affirmative act of concealment for the purposes of the fraudulent concealment tolling doctrine" in *Edmonson*. 922 F.3d at 554; Oral Argument at 11:40 a.m. Moreover, West Town's concession that the kickbacks were paid in "postage stamps" as opposed to cash, or that the kickbacks were paid in standard currency transferred to West Town through a third-party company, are in-of-themselves evidence of the type of trickery that amounts to fraudulent concealment. *See Carrier Corp.*, 673 F.3d 430, 447. The Court finds Plaintiffs have met their burden in showing the first element required to toll the limitation periods of the respective causes of action.

As to the second and third elements relevant to tolling, West Town asserts that Plaintiffs failed to discover the alleged fraud during, or conduct *any* due diligence within, the limitations periods. ECF No. 17-1, pp. 22-26. Indeed, the bank declares Plaintiffs conducted no due diligence until each was contacted by their current attorneys. ECF No. 17-1, p. 27. Moreover, says the bank, on the date of their respective loan closings Plaintiffs knew what the cost of the allegedly above-market prices charged by All Star were and, further, that West Town had advertised that All Star's services were 30-40% lower than market rate. *Id.* Had Plaintiffs investigated this disconnect, West Town continues, "they would have found breadcrumbs leading them toward a potential RESPA

4

claim." ECF No. 17-1, p. 26 (quoting *Cunningham v. M&T Bank Corp.*, 814 F.3d 156, 162, n.3 (3rd Cir. 2016)). This is a rather breathtaking argument.

In *Edmonson*, the lending bank also argued that the plaintiffs were on sufficient notice to conduct further inquiry because, for example, newspapers had published articles concerning the bank's fraudulent practices. 922 F.3d at 555. But the Fourth Circuit noted that there was no evidence that the plaintiffs there had access to or had read those articles, nor was it possible to decide at the motion to dismiss stage whether such information "would have prompted a reasonable person" to further investigate the lender's documentation and actions. *Id.* at 558 (quoting *Go Computer, Inc. v. Microsoft Corp.*, 508 F.3d 170, 178 (4th Cir. 2007)). In the case at bar, there is a similar question as to whether Plaintiffs received, much less read, the advertisements promoting All Star's services.[2] Even if they had, it is not for the Court to determine at this stage that, if armed with such information, "one would expect a reasonable residential mortgage borrower" to conduct a further investigation into its lender's documents and fee structures. *Edmonson*, 922 F.3d at 558 (emphasis omitted). The appropriate level of due diligence "should be decided by the finder of fact and is not amenable to resolution on the pleadings or at summary judgment." *Id.*

Plaintiffs have satisfied the Court that they have sufficiently pled that West Town fraudulently concealed evidence of its alleged scheme; that Plaintiffs plausibly allege that they did not discover the supposed fraud during the limitations period; and that whatever investigations Plaintiffs did or did not conduct into West Town's actions were not inconsistent with due diligence. Congress did not intend for entities that engage in unlawful kickbacks and conceal their schemes "to reap the benefits of the statute of limitations as a defense." *Edmonson*, 922 F.3d at 547. The

---

[2] Interestingly, West Town itself argues "the Complaint is devoid of any allegation that these Plaintiffs ever received, much less saw, the allegedly fraudulent marketing materials." ECF No. 17-1, p. 15 (markings omitted).

Court finds that the applicable statutes of limitations should be tolled, and that Plaintiffs' RESPA, RICO, and Sherman Act claims are not barred by their respective statutes of limitations.

### c. *RESPA Claim*

Having determined that the RESPA claim is not time-barred, the Court considers whether Plaintiffs have put forth sufficient factual allegations that West Town received kickbacks in exchange for referring a mortgagor to All Star. 12 U.S.C. § 2607(a).[3] Clearly they have.

Their complaint is chocked full of detailed allegations supported, in many instances, by invoices, forms, and emails by West Town employees. For example, according to the Complaint, on or about May 24, 2010, All Star payed a $968 kickback to West Town in the form of 2,200 postage stamps. ECF No. 1, ¶ 60. According to emails provided by Plaintiffs, a West Town employee from the bank's branch in Bel Air, Maryland requested the stamp "drop" from All Star, explaining that out of "that drop" "[y]ou should see a minimum of 22 deals." ECF No. 1-3. Several days later, the bank's branch manager emailed an All Star employee stating that he was ready to send out more mailers but was awaiting a "drop" of stamps, specifying that "Allstar [sic] should get 8 new orders from this drop." ECF No. 1, ¶ 62; ECF No. 1-3. The next month, the same All Star employee apparently emailed the same bank branch manager stating, "We paid for marketing twice and now I'm not getting all the loans from you guys?? Not happy about this…" ECF No. 1, ¶ 63; ECF No. 1-6. In other instances, Plaintiffs allege, the kickback was laundered through third-party companies, including a marketing services company and an internet-based real estate listing provider, both of which, it may be noted, are named in the Complaint. ECF No. 1, ¶¶ 57, 156. In

---

[3] In the pertinent part, the statute reads: "No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person." 12 U.S.C. § 2607(a)

all, Plaintiffs claim that West Town received $130,000 in kickbacks, $95,000 of which were paid in postage stamps. ECF No. 21, p. 1.

Plaintiffs have pled their RESPA claim with the requisite particularity to survive a 12(b)(6) motion to dismiss. As to Count I, West Town's Motion to Dismiss is **DENIED**.

### *d. RICO Claim*

The Court must also determine if Plaintiffs have sufficiently pled the elements of a RICO violation under 18 U.S.C. 1962, which "requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Kerby v. Mortgage Funding Corp.*, 992 F. Supp. 787, 798 (D. Md. 1998) (quoting *Sedima, S.P.R.L., v. Imrex Company, Inc.*, 473 U.S. 479, 496 (1985)). "Racketeering activity," in turn, is defined as consisting of one of several predicate acts identified in 18 U.S.C. § 1961(1).

West Town asserts that Plaintiffs do not properly allege racketeering activity. Instead, they argue, Plaintiffs are simply repackaging the alleged RESPA claim as a RICO violation. This, they continue, is not permissible because Congress did not list RESPA as one of the predicate acts within the RICO statute. ECF No. 17-1, pp. 38-40; *see also* 18 U.S.C. § 1961(1). Apparently seeking to avoid this potential roadblock, Plaintiffs assert that their RICO claim is not based upon the kickbacks at the heart of their RESPA claim, but rather on the use of the mail and interstate wires to further the fraud, ECF No. 1, ¶ 414, implicating the mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343, which are listed in 18 U.S.C. § 1961(1)(B) as predicate acts of RICO.

The Court considers whether Plaintiffs have sufficiently pled mail and/or wire fraud, which must comply with Rule 9(b)'s heightened pleading standard. *Chambers v. King Buick GMC*, 43 F. Supp. 3d 575, 586 (D. Md. 2014). "The elements of mail fraud are (1) a scheme disclosing an intent to defraud, and (2) the use of the mails in furtherance of the scheme." *Chisolm v. TranSouth*

*Financial Corp.*, 95 F.3d 331 (4th Cir. 1996). "Wire fraud is similar, except that 'wire, radio, or television,' rather than the mails, provides the means to further the fraud." *Kerby*, 992 F. Supp. at 798 (citing 18 U.S.C.A. § 1343).

Plaintiffs direct the Court to West Town's solicitations, sent via the U.S. mail, stating that borrowers could save "30-40% on title fees with All Star." *See* ECF No. 1-74. They allege that West Town used the federal postage stamps provided as payment by All Star to mail those borrower solicitations, *see, e.g.*, ECF No. 1, ¶ 66, as well as emails indicating that these mailers were sent to numerous states, *see, e.g.*, ECF No. 1-7. Plaintiffs also cite the fact that kickbacks allegedly laundered through third-party entities necessarily used interstate wires because, for example, a marketing company based in Florida wired the funds interstate to a West Town branch in Maryland. ECF No. 1, ¶¶ 56-59.

Not only have Plaintiffs pled that West Town perpetrated a scheme to charge borrowers above-market rates for settlement services and receive kickbacks from All Star in return, *see* ECF No. 1, ¶ 413; they have appended to their Complaint copies of the allegedly fraudulent solicitation mailers, *see* ECF No. 1-74, emails between West Town and All Star employees apparently discussing the dates and amounts of kickback payments, *see, e.g.*, ECF No. 1-3, and copies of invoices purportedly showing the funneling of kickback payments through third-party companies, *see, e.g.*, ECF No. 1-2.

West Town does not dispute its use of interstate mail and wires but asserts that Plaintiffs are merely pleading a scheme to violate *RESPA*, not a "scheme to… *defraud*" as required by the mail and wire fraud statutes. ECF No. 22, p. 24; 18 U.S.C. §§ 1341, 1343 (emphasis added). But West Town provides no reason why the same facts supporting the RESPA violation cannot also support a violation of RICO. Indeed, this Court has on more than one occasion allowed plaintiffs

to pursue RESPA and RICO claims in tandem. *See Minter v. Wells Fargo Bank, N.A.*, 274 F.R.D. 525 (D. Md. 2011); *Kerby*, 992 F. Supp. 787.

In the alternative, West Town argues that the mail and wire fraud alleged by Plaintiffs is merely "garden-variety" fraud, not the type of organized crime intended to be covered by RICO. ECF No. 17-1, p. 39. It is true that courts in this circuit are "cautious about basing a RICO claim on predicate acts of mail and wire fraud… [in order to] preserve a distinction between ordinary or garden-variety fraud claims better prosecuted under state law and cases involving a more serious scope of activity." *Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 238 (4th Cir. 2000). But here Plaintiffs have alleged in detail a fraudulent scheme involving the conduct of multiple companies and at least six bank branches over the course of five years that, Plaintiffs say, affected over 2,000 borrowers in multiple states. *See* ECF No. 21, p.1. Indeed, a scheme as far-reaching as the one alleged here "pos[es] a special threat to social well-being." *Biggs v. Eaglewood Mortg. LLC*, 582 F. Supp. 2d 707, 714 (D. Md. 2008) (quoting *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 551 (4th Cir. 2001)). It would not be unfair to say that West Town's alleged criminal activity, if proven, would pose a threat to societal trust in the country's banking and home-ownership systems. The Court finds that West Town's purported acts are appropriately covered by the RICO statute. *See Tracey v. First American Title Ins. Co.*, 935 F.Supp.2d 826 (D. Md. 2013); *see generally CVLR Performance Horses, Inc. v. Wayne*, 524 Fed. Appx. 924 (4th Cir. 2013).

For all these reasons, the Court finds that Plaintiffs have sufficiently satisfied the requisite heightened pleading standard as it pertains to their RICO claim. Thus, as to Count III, West Town's Motion to Dismiss is **DENIED**.

## e. Sherman Act Claim

There remains the claim that West Town violated the Sherman Act, 15 U.S.C. § 1, which prohibits certain anticompetitive behavior among market actors. While the text of the Sherman Act broadly prohibits "[e]very contract, combination..., or conspiracy, in restraint of trade or commerce," *id.*, courts have long held that the law outlaws only *unreasonable* restraints of trade. *Continental Airlines, Inc. v. United Airlines, Inc.*, 277 F.3d 499 (4th Cir. 2002) (citing *Standard Oil Co. v. United States*, 221 U.S. 1, 58 (1911)). Courts have adopted three analytical methods in determining whether a such a violation occurred: (1) the per se analysis, with respect to obviously anticompetitive restraints, (2) the quick-look analysis, for those combinations with procompetitive justification, and (3) the full rule of reason, for restraints whose net impact on competition is particularly difficult to determine. *Continental Airlines,* 277 F.3d at 508-9.

Plaintiffs have alleged that West Town engaged in a per se unreasonable horizontal price fixing and refusal to deal agreement, but in the alternative, suggest that the Court should undertake a quick look analysis. While most alleged restraints on trade "require elaborate inquiry under the rule of reason," *In re American Honda Motor Co., Inc. Dealerships Relations Litig.*, 941 F. Supp. 528 (D. Md. 2014), Plaintiffs specifically do not ask the Court to conduct analysis pursuant to the rule of reason, and therefore it need not be discussed, s*ee Texaco*, 547 U.S. at 7, n.2. They rely on the per se rule.

Pleading "per se violations can lighten a plaintiff's litigation burdens" but "it is not a riskless strategy" because if the court "determines that the restraint at issue is sufficiently different from the per se archetypes... plaintiff's claims will be dismissed." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 317 (3rd Cir. 2010).

### i. *Applicability of Per Se Analysis*

"[C]ertain recurring business practices, because of their pernicious effect on competition, are considered illegal per se under the Sherman Act." *Hospital Bldg. Co. v. Trustees of Rex Hosp.*, 691 F.3d 678 (4th Cir. 1982). The Supreme Court, however, has reserved applying per se liability "only to those agreements that are so plainly anticompetitive that no elaborate study of the industry is needed to establish their illegality." *Texaco Inc. v. Dagher*, 547 U.S. 1, 5 (2006) (markings omitted). That said, the Supreme Court has repeatedly held that "[p]price-fixing agreements between two or more competitors, otherwise known as horizontal price-fixing agreements, fall into the category of arrangements that are per se unlawful." *Id.*; *Leegin Creative Leather Products, Inc. v. PSKS, Inc.*, 551 U.S. 877, 886 (2007); *Catalano, Inc. v. Target Sales, Inc.*, 446 U.S. 463, 467 (1980). This is because, based on years of experience, courts have found that such agreements "always or almost always tend to restrict competition and decrease output." *Leegin*, 551 U.S. at 886 (citing *Business Electronics Corp. v. Sharp Electronics Corp.*, 485 U.S. 717, 723 (1988)).

Despite the fact that they are not "competitors," Plaintiffs allege that West Town and All Star's scheme agreeing to fix the price of title and settlement services charged to borrowers fits this mold; in other words, they allege that West Town perpetrated a horizontal price fixing agreement that is per se unreasonable.[4] ECF No. 21, pp. 27-30.

"To prove the existence of a horizontal price-fixing conspiracy, a plaintiff must demonstrate the following: (1) the existence of an agreement, combination, or conspiracy, (2) among actual competitors, (3) with the purpose or effect of raising, depressing, fixing, pegging, or

---

[4] In contrast to a horizontal agreement, a vertical agreement is one between actors at different levels of the market, typically between a manufacturer and a distributor. *See, e.g., Monsanto Co. v. Spray-Rite Service Corp.*, 465 U.S. 752 (1984). Plaintiffs expressly state that they are not claiming West Town participated in an illegal vertical agreement. ECF No. 21, p. 26 ("West Town's arguments as to vertical price fixing can be disposed with summarily, because Plaintiffs do not allege that the relationship between West Town and All Star is 'vertical', nor that the price fixing and refusal to deal agreements are 'vertical agreements', nor do Plaintiffs allege that any of the pro-competitive effects characteristic of vertical agreements exist.").

11

stabilizing the price of a commodity, (4) in interstate or foreign commerce." *In re Titanium Dioxide Antitrust Litig.*, 959 F. Supp. 2d 799, 819 (D. Md. 2013) (quoting *In re Med. X-Ray Film Antitrust Litig.*, v, 215-16 (E.D.N.Y. 1996)) (internal markings omitted). West Town argues that Plaintiffs do not meet this burden because in particular, West Town and All Star are not competitors. The Court concurs.

The law appropriately tethers application of the per se rule to agreements between or among actual competitors. As the Supreme Court long-ago explained, were the Sherman Act "to be read in the narrowest possible way, any commercial contract could be deemed to violate it" since "[t]heoretically all manufacturers, distributors, merchants, sellers, and buyers could be considered as potential competitors of each other." *United States v. Topco Associates, Inc.*, 405 U.S. 596, 606 (1972) (citing *Chicago Bd. of Trade v. United States*, 246 U.S. 231, 238 (1918)). Indeed, the Supreme Court has found that when non-competitors, including vertically aligned entities or joint ventures, implement price restraints it can have procompetitive effects. *See Leegin*, 551 U.S. at 889-893; *Broadcast Music, Inc. v. CBS*, 441 U.S. 1, 23 (1979).

Moreover, courts have been unwilling to expand per se categories. *See* I ABA Section of Antitrust Law, Antitrust Law Developments 57 (7th ed. 2012); *see also Topco*, 405 U.S. 596, 607-608 ("It is only after considerable experience with certain business relationships that courts classify them as per se violations of the Sherman Act."). In *Texaco, supra*, the Supreme Court analyzed whether two oil and gasoline companies, Texaco and Shell Oil, engaged in unlawful price fixing when they set a single price for both companies' gasoline via a joint venture. 547 U.S. 1. The Supreme Court held that the entities did not engage in per se unlawful horizontal price fixing because they were not, in the relevant market, acting as competitors. *Id.* at 5-6. Lower courts have thus been reluctant to extend per se treatment to non-competitors. For example, Plaintiffs in *New*

*England Carpenters Health Benefits Fund v. McKesson Corp.*, acknowledged the alleged antitrust violators, a drug wholesaler and a publishing company, were not competitors and argued that it was a "distinction without a difference" because the harm resulting from their agreement was similar to that caused by a traditional horizontal price fixing arrangement. 573 F. Supp. 2d 431, 434 (D. Mass. 2008). The court rejected this argument, emphasizing that the alleged conduct did not fall within one of the narrowly recognized categories warranting per se analysis. *Id.*

The argument before the Court is similar. West Town and All Star are distinctly not competitors. West Town is "commercial bank," ECF No. 1, ¶ 15, whereas All Star is a "title and settlement services company," ECF No. 1 ¶ 2. All Star does not offer residential mortgages, and West Town does not provide settlement services. As in *New England Carpenters*, *supra*, Plaintiffs here concede that the two allegedly conspiring entities are not competitors. ECF No. 21, p. 36. Notably, Plaintiffs have not supplied a single case that has applied the per se rule to non-competing entities allegedly engaged in a price fixing scheme.[5]

Because Plaintiffs did not, as they must, plausibly allege that West Town and All Star are competitors, they have not sufficiently pled a per se violation of the Sherman Act.

    *ii.    Applicability of Quick Look Analysis*

In the alternative, Plaintiffs request the Court undertake an abbreviated quick look analysis to find a Sherman Act violation. *See California Dental Ass'n v. FTC*, 526 U.S. 756, 769-71 (1999).

---

[5] Plaintiffs also allege a refusal to deal scheme, otherwise known as a group boycott, by which West Town would "refuse to deal with any title and settlement services company" other than All Star. ECF No. 1, ¶ 40. Like their price fixing claim, the group boycott claim also fails because a group boycott must be among competitors to be per se unlawful. *NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 135 (1998); *Southern Volkswagen, Inc. v. Centrix Financial, LLC*, 357 F. Supp. 2d 837, 848-49 (D. Md. 2005) ("For an agreement to be deemed a per se group boycott, it must be made among horizontal competitors."); *see also Campfield v. State Farm Mut. Auto. Ins. Co.*, 532 F.3d 1111 (10th Cir. 2008) ("the claims are inadequately pled because State Farm and Lynx are not competitors, and therefore cannot engage in a per se illegal, horizontal restraint of trade"); *Spectators' Communication Network Inc. v. Colonial Country Club*, 253 F.3d 215 (5th Cir. 2001). Moreover, Plaintiffs have offered little detail concerning the refusal to deal portion of the alleged agreement. Indeed, the record suggests that West Town did not prevent prospective borrowers from procuring settlement services from companies other than All Star if they found a preferable or cheaper title company. *See, e.g.*, ECF No. 1-17.

A quick look is warranted when, "as in a per se case" the "restraint is clear" "but procompetitive justifications for it also exist." *Continental*, 277 F.3d at 509-510. Accordingly, courts have held that a quick look is only appropriate when "the plaintiff first shows that the challenged restraint falls into one of the general per se categories." *United States v. eBay Inc.*, 968 F. Supp. 2d 1030, 1040 (N.D. Cal. 2013). When a plaintiff has not met the pleading standards for a per se violation, courts have also dismissed their claims for a quick look analysis. *Texaco*, 547 U.S. at n.3 ("for the same reasons that per se liability is unwarranted here, we conclude that petitioners cannot be held liable under the quick look doctrine"); *see also Acton v. Merle Norman Cosmetics, Inc.*, 1995 WL 441852, at n.9 (C.D. Cal. May 16, 1995) ("Because the 'quick look' approach is only used in cases involving horizontal agreements which come close to warranting per se treatment, the 'quick look' approach has no applicability to the facts of this case, particularly given the dismissal of plaintiffs' per se claims."). Since, as indicated, Plaintiffs have not sufficiently pled a horizontal price fixing agreement, their reliance on a quick look analysis also falters.

West Town's Motion to Dismiss Count II is **GRANTED**.

### f. Conclusion

To summarize, Defendants Motion to Dismiss, ECF No. 17, is **GRANTED-IN-PART** and **DENIED-IN-PART**. It is **GRANTED** as to Count II, concerning Plaintiffs' Sherman Act claim. It is **DENIED** as to Counts I and III, concerning Plaintiffs' RESPA and RICO claims.

A separate Order will **ISSUE**.

/s/<br>
_____<br>
PETER J. MESSITTE<br>
UNITED STATES DISTRICT JUDGE

**November 19, 2019**